Nathan Andrew RUSSELL, a minor child, by his father and guardian, Frank D. RUSSELL, and Frank D. Russell and Barbara L. Russell

v.

### The FANNIN COUNTY SCHOOL DISTRICT, et al.

### No. 2:91–CV–0027–WCO.

United States District Court, N.D. Georgia, Gainesville Division.

Feb. 21, 1992.

Patrick W. McKee, Atlanta, Ga., for plaintiffs.

Phillip L. Hartley, Gainesville, Ga., for defendants.

## ORDER

O'KELLEY, Chief Judge.

Plaintiff, Nathan Andrew Russell ("Andy") and plaintiffs, Frank and Barbara Russell, his parents, have brought this civil rights action against the Fannin County School District, the members of its board of

education, its superintendent, and the high school principal seeking damages and other relief as a result of injuries Andy sustained when another student, Nathan Lewis ("Nathan"), hit Andy several times in the head with his fists in the hall between classes at Fannin County High School.

Presently before the court are plaintiffs' and defendants' cross motions for summary judgment. Defendants seek summary judgment as to all claims, and plaintiffs seek summary judgment as to the defendants' liability under section 1983. The defendants requested a hearing on their motion for summary judgment, and a hearing was held on January 16, 1992.

### FACTS

During lunch period on October 2, 1990, Gary Mealer, an assistant principal at Fannin County High School, was summoned to the break area of the school by Mr. Payne, a teacher assigned to monitor the students in the break area, known as the "commons area" at the high school. When Mr. Mealer arrived, Mr. Payne told him that a crowd of boys had gathered and he thought that a problem was developing, but it now appeared that nothing was happening and the group had disbanded. Nevertheless, Mr. Mealer remained in the commons area to help supervise the students gathering between lunch and their fourth period and to monitor the group of students identified by Mr. Payne. When the bell rang to end lunch period, Mr. Mealer observed Andy walking quickly along the classroom wing toward the outside entrance at the end of the building. He then saw Nathan with a group of students exit the commons area and begin walking along the classroom wing in the same direction as Andy. Immediately after Andy entered the building,

Nathan and his group began running after Andy. Mr. Mealer then began running after Nathan but by the time he reached the two boys, Nathan had already beat up Andy.

The animosity between Nathan and Andy began several weeks earlier when Nathan began to bully and pick on Andy in math class.[1] Andy never reported Nathan's conduct to teachers or administrators at Fannin County High School. According to Andy, the October 2, 1990, incident began during lunch when Andy was sitting in the lunchroom with some friends. Nathan and another student approached Andy and accused him of calling Nathan a "son of a bitch." Andy denied the accusation and Nathan left the lunchroom.

After lunch, Andy and his friends went to an area known as the "outside commons" where Nathan approached Andy again and asked him if he wanted anything of him. The boys and their friends exchanged looks and a few words during the remainder of the break. When the bell rang, Andy began walking along the outside of the building to his class. As he approached the entrance of the building, Nathan began chasing him. Nathan caught Andy and hit him several times in the head which Andy alleges rendered him unconscious. Andy suffered a broken hand, a fractured left orbit and some damage to his left eye as a result of Nathan's attack. As punishment for beating up Andy, Nathan was required to serve a five-day in-school suspension[2], the penalty for first offense fighting.[3]

Andy's parents were frustrated because they believed that Nathan's punishment was not harsh enough under the circumstances. It was their opinion that school

---

1. On October 2, 1990, Andy was 15 years old and in the ninth grade, and Nathan was 16 years old and in the tenth grade.

2. An in-school suspension requires a student to attend school, but the student is segregated from the student body. Plaintiffs described it as a day-long study hall.

3. The Fannin County High School implements school board policy by notifying students in its handbook that "fighting," which it defines as

"violent physical contact against another," is prohibited. The Handbook sets forth penalties for fighting and provides a system of progressive discipline. For a student's first fighting offense, a five-day in-school suspension is imposed. For the second and third offenses, out-of-school suspensions of five and ten days respectively are imposed. For subsequent offenses, punishment may include expulsion. (Defendants' Exhibit 1, p. 9).

officials had wrongly deemed the incident a routine fight and punished Nathan only for first offense fighting.[4]

After Nathan served the in-school suspension, Andy alleges that Nathan continued to harass him, and school officials did nothing to protect Andy until February 15, 1991.[5] Andy complained of the alleged harassment to his parents and they complained to school officials.

Andy's parents allege that Andy has not been the same since Nathan's attack. Specifically, they allege that Andy has been a recluse following Nathan's attack; for example, Andy spends a lot of time alone in his room, no longer participates in family conversations, and has lost interest in going to college and pursuing a career. Andy's parents attribute Andy's change in behavior to his fear of another attack by Nathan.

In Count I of the complaint, Andy Russell has alleged a federal constitutional claim for violation of his rights under the Fourteenth Amendment as provided in 42 U.S.C. § 1983. In Count II, Andy's parents have alleged a violation of their constitutional right to the society and companionship of their son. Count III alleges a state tort law claim for negligent supervision.

## DISCUSSION

### A. Summary Judgment Standard

Summary judgment is only proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact, and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). Because the procedure deprives the parties of a trial on the issues, the court must be careful to ensure that only those claims for which there is no need for a factual determination as to any material fact are disposed of by summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In addition, a court evaluating a summary judgment motion must view the evidence in the light most favorable to the non-movant. *Samples v. City of Atlanta*, 846 F.2d 1328, 1330 (11th Cir.1988); *Tippens v. Celotex Corp.*, 805 F.2d 949, 953 (11th Cir.1986), *reh'g denied*, 815 F.2d 66 (1987). To survive a motion for summary judgment, the non-moving party need only present evidence from which the trier of fact might return a verdict in his favor. *Samples*, 846 F.2d at 1330.

However, consideration of a summary judgment motion does not lessen the burden on the non-moving party; the non-moving party still bears the burden of coming forward with sufficient evidence on *each element* that must be proved. *Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1080 (11th Cir.1990); *see Celotex Corp. v. Catrett*, 477 U.S. at 322–23, 106 S.Ct. at 2552–53. "If on any part of the prima facie case there would be insufficient evidence to require submission of the case to the jury, the court must grant the motion for summary judgment for the defendant." *Earley*, 907 F.2d at 1080. In *Earley*, the Eleventh Circuit further emphasized:

"The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.... Rule 56(c) mandates the entry of summary judgment ... against a party who fails to make a showing sufficient to establish the existence of an element essential to

---

**4.** Andy's parents also brought charges against Nathan in the Fannin County Juvenile Court. As a result of the juvenile court action, Nathan was sent to the Youth Development Center, placed on probation, ordered that he have no contact with Andy Russell, and ordered to make some kind of restitution to the Russells.

**5.** Plaintiffs maintain that sometime in January 1991, defendants became aware that the Juvenile court had placed restrictions on Nathan's contact with Andy, but did not take any affirmative action to stop the alleged harassment until February 15, 1991, when teachers were officially informed of the juvenile court order. The alleged harassment consisted of Nathan sitting near Andy and looking at him. School officials were informed of the alleged harassment by Andy's parents. Andy never complained directly to school officials that Nathan was harassing him.

that party's case.... In such circumstances, there can be no genuine issue of material fact, since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.... If the evidence is *merely colorable,* or is *not significantly probative,* summary judgment may be granted.

*Id.* (emphasis in original).

Here, even liberally construing the plaintiffs' pleadings and other evidence submitted, the court finds that the facts as agreed upon by the parties preclude the plaintiffs' recovery under section 1983 because the plaintiffs have failed to establish the existence of an element essential to their case: namely, that Andy has been deprived of constitutional rights sufficient to allow recovery under 42 U.S.C. § 1983.[6]

*B. Section 1983 Liability*

■ To prevail in a civil rights action under 42 U.S.C. § 1983, a plaintiff must show that the defendants, under color of state law, deprived the plaintiffs of a right secured by the Constitution and laws of the United States. *Parratt v. Taylor,* 451 U.S. 527, 535, 101 S.Ct. 1908, 1913, 68 L.Ed.2d 420 (1981), *overruled on other grounds, Daniels v. Williams,* 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986); *Cornelius v. Town of Highland Lake, Ala.,* 880 F.2d 348, 351 (11th Cir.1989), *cert. denied,* 494 U.S. 1066, 110 S.Ct. 1784, 108 L.Ed.2d 785 (1990); *Everett v. Napper,* 833 F.2d 1507, 1510 (11th Cir.1987). Section 1983 alone creates no substantive rights; rather, it provides a remedy for deprivations of rights established elsewhere in the Constitution or federal laws. *Baker v. McCollan,* 443 U.S. 137, 144 n. 3, 99 S.Ct. 2689, 2674 n. 3, 61 L.Ed.2d 433 (1979); *Wideman v. Shallowford Community Hosp., Inc.,* 826 F.2d 1030, 1032 (11th Cir.1987). An underlying constitutional right *must* exist before a section 1983 action will lie. *Wideman,* 826 F.2d at 1032.

■ Plaintiffs allege that defendants breached a constitutional duty to the plaintiffs in failing to protect Andy from threats, intimidation, and bodily injury from another student. Plaintiffs aver that defendants knew or should have known of the school's problem with fighting. In particular, plaintiffs contend that defendants failed to adopt a policy to effectively prohibit fighting in Fannin County High School. Plaintiffs maintain if the Fannin County School Board had adopted and followed policies requiring harsher punishments for fighting, Nathan would have been deterred from beating up Andy.

In order to properly address the plaintiffs' claims, the court must first consider the threshold issue of whether the governmental entity (here, defendants) had a constitutionally recognized duty to protect the plaintiff, Andy Russell, from the threats, intimidation and bodily injury of another student, Nathan Lewis. If no recognized duty exists under the Fourteenth Amendment of the United States Constitution, then the plaintiffs have no cause of action under section 1983.

■ The Supreme Court has made very clear (in far more serious circumstances) that substantive due process does not entitle every individual under the care of the state to protection from physical injuries. *DeShaney v. Winnebago County Dept. of Social Serv.,* 489 U.S. 189, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989). In *De-Shaney,* the Supreme Court held that county authorities who had learned that a child was at risk of being abused by his father committed no constitutional violation when they failed to act to prevent abuse. *Id.* The due process clause of the Fourteenth Amendment states that "[n]o state shall ... deprive any person of life, liberty, or property, without due process of law." The Supreme Court explained that the Fourteenth Amendment protects against deprivation of life, liberty, or property without due process of law committed by state actors but does not protect against

---

**6.** The court notes that Andy's parents claim is dependent upon Andy establishing a claim un- der section 1983.

deprivation of life, liberty, or property committed by private actors. *Deshaney*, 489 U.S. at 195, 109 S.Ct. at 1003. In other words, the state has no affirmative constitutional duty to protect citizens from other citizens. Nor will the state's failure to provide protection against private violence constitute a due process violation. *Id.* at 197, 109 S.Ct. at 1004.

Plaintiffs argue that the court should follow the Third Circuit's holding in *Stoneking v. Bradford Area School Dist.*, 882 F.2d 720 (3rd Cir.1988), *cert. denied, Smith v. Stoneking*, 493 U.S. 1044, 110 S.Ct. 840, 107 L.Ed.2d 835 (1990). In *Stoneking*, the Third Circuit upheld a section 1983 claim against school authorities for maintenance of inadequate customs and policies which resulted in plaintiff, a student, being sexually abused by the school's band director. *Id.* Plaintiffs in the above-captioned matter argue that defendants, like those in *Stoneking*, chose and maintained inadequate customs and policies and are therefore liable under section 1983.[7] However, plaintiffs ignore the language that begins Section II of the court's opinion:

> The principal distinction between DeShaney's situation and that of Stoneking is that Deshaney's injuries resulted from the hands of a private actor, whereas Stoneking's resulted from the actions of a state employee. The significance of the status of the perpetrator as a private actor rather than a state official is referred to on numerous occasions in the *Deshaney* opinion. Not only is the Court's statement of the holding in terms of the identity of the actor ("a State's failure to protect an individual *against private violence* simply does not constitute a violation of the Due Process Clause," 109 S.Ct. at 1004), but the analytic steps taken by the Court to reach that holding continuously take note of the status of the person responsible for the injuries.

*Id.* at 724.

■ Here, there is no question that the defendants did not directly harm plaintiffs—Nathan did so by hitting Andy with his fists. Plaintiffs argue that defendants' ineffective customs and policies, which failed to prevent fighting in the Fannin County High School, were the primary cause of plaintiffs' injuries. However, *DeShaney* stands for the harsh proposition that even when state officials know that a person is in imminent harm from a third party, the Fourth Amendment (through the Fourteenth Amendment) imposes upon those state officials no obligation to prevent that harm. *Deshaney*, 489 U.S. at 200–201, 109 S.Ct. at 1006–07.

■ However, in certain special circumstances, when the state has placed a person into its own custody, the state's failure to protect that person may constitute a constitutional violation. *Deshaney*, 489 U.S. at 198, 109 S.Ct. at 1005. In the present case, plaintiffs argue that Nathan and Andy were in the custody of the Fannin County School District such that a special relationship between the school and its students was created. Courts have used the special relationship analysis to find liability under section 1983 in cases where a plaintiff seeks to hold the state responsible for the private actions of a third party. *See, e.g., Jones v. Phyfer,* 761 F.2d 642, 646 (11th Cir.1985) ("there is no constitutional duty to protect members of the general public from random criminal violence unless a special relationship exists which imposes such a duty"); *Wright v. City of Ozark,* 715 F.2d 1513, 1515 (11th Cir.1983) (absent a special relationship, "the due process clause of the Constitution does not protect a member of the public at large from the criminal acts of a third person, even if the state was remiss in allowing the third person to be in a position in which he might cause harm to a member of the public...."). For example, the state has an affirmative duty of care and protection to prisoners, *Estelle v. Gamble,* 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976), and to involuntarily committed mental patients,

---

7. Plaintiffs also assert that the court upheld the 1983 claim on the theory that the defendants "supervised" the band director rather than on

the theory that the teacher was a state actor. The court disagrees with plaintiffs' interpretation of the rationale in *Stoneking*.

*Youngberg v. Romeo,* 457 U.S. 307, 102 S.Ct. 2452, 73 L.Ed.2d 28 (1982).

"Under th[is] analysis, government officials may be held liable for the deprivation by a third party of a private citizen's due process rights when a special relationship is found to exist between the victim and the third party or between the victim and the government officials." *Cornelius,* 880 F.2d at 353 (citing *Wright v. City of Ozark,* 715 F.2d at 1515). The primary thread weaving these special relationship cases together is the notion that:

> if the state takes a person into custody or otherwise assumes responsibility for that person's welfare, a "special relationship" may be created in respect of that person, and the fourteenth amendment imposes a concomitant duty on the state to assume some measure of responsibility for the person's safety and well-being.

*Wideman,* 826 F.2d at 1035 (quoting *Estate of Gilmore,* 787 F.2d 714, 721 (1st Cir.), *cert. denied,* 479 U.S. 882, 107 S.Ct. 270, 93 L.Ed.2d 247 (1986)); *see also Deshaney,* 489 U.S. at 199–200, 109 S.Ct. at 1005–06.

■ In the prison context, for example, an inmate depends on the state to provide certain basic human needs such as food, shelter, and medical care which by virtue of his incarceration he can no longer provide for himself. *See Fitzke v. Shappell,* 468 F.2d 1072, 1076 (6th Cir.1972). But beyond cases of incarcerated prisoners and involuntarily committed mental patients, the Supreme Court has never recognized such a duty. *See Youngberg,* 457 U.S. 307, 102 S.Ct. 2452 (mental patients); *Estelle v. Gamble,* 429 U.S. 97, 97 S.Ct. 285 (prisoners). Stated more broadly, the rationale for imposing these special relationships "lies in constraints the state imposes on private action." *Wideman,* 826 F.2d at 1035 (quoting *Walker v. Rowe,* 791 F.2d 507, 511 (7th Cir.), *cert. denied,* 479 U.S. 994, 107 S.Ct. 597, 93 L.Ed.2d 597 (1986)).

Following this rationale a constitutional duty can arise only when a state or municipality, by exercising a significant degree of control over an individual, places that person in a worse situation than he would have been had the government not acted at all. Such a situation could arise by virtue of the states affirmatively placing an individual in a position of danger, effectively stripping a person of her ability to defend herself or cutting off potential sources of private aid.

The key concept is the exercise of dominion or restraint by the state. The state must somehow significantly limit an individual's freedom or impair his ability to act on his own before it can be constitutionally required to care and provide for that person.

*Wideman,* 826 F.2d at 1035.

The court is not suggesting that prisoners and mental patients are an exhaustive list of all persons to whom the state owes some affirmative duties, but the government, acting through local school officials, has not rendered its students so helpless that an affirmative constitutional duty to protect arises. If any duty of protection arises, it will be outside the Constitution and inside this state's legislature.[8]

The state's custody over their persons is the most distinguishing characteristic in the cases of the mental patient and the prisoner; these people are unable to provide for basic human needs like food, shelter, clothing, medical care, and reasonable safety. At most the state requires children under sixteen years of age to attend school, but it cannot be suggested that compulsory school attendance makes a fifteen-year-old child unable to care for basic human needs. Moreover, as a general proposition, compulsory school attendance does not place a child in a worse situation or in a position of danger. The parents still retain primary responsibility for feeding, clothing, sheltering, and caring for the child. By mandating school attendance for children, the

---

**8.** Plaintiffs have also argued that under Georgia law, defendants are charged with the duty of protecting their students. However, a duty which arises under the laws of Georgia does not necessarily arise under the United States Constitution. In order to state a claim under section 1983, plaintiffs must show they have been deprived of a right protected under the United States Constitution or other federal law. *See Parratt v. Taylor, supra.*

state of Georgia has not assumed responsibility for their entire personal lives; these children and their parents retain substantial freedom to act. Andy could have expressed his fear and concern over Nathan's conduct to his teachers or school administrators. Schoolchildren are not like mental patients and prisoners such that a state has an affirmative duty to protect them.[9]

■ Plaintiffs urge the court to follow the holding in *Pagano v. Massapequa Pub. Schools*, 714 F.Supp. 641 (E.D.N.Y.1989). The *Pagano* court held that the plaintiff student stated a sufficient claim against school officials under section 1983 to withstand a motion to dismiss. However, the facts in *Pagano* are clearly distinguishable from the facts in the present case. The *Pagano* case involved an elementary school student who alleged seventeen incidents of abuse and attacks by fellow students. Moreover, the defendant school officials were allegedly aware of the attacks and had expressly said they would take the necessary steps to prevent such attacks in the future. In denying defendants' motion to dismiss, the court merely stated:

> We consider elementary school students who are required to attend school ... to be owed *some* duty of care by defendants which may or may not rise to the level required in the above-mentioned circumstances.

*Id.* at 643.

Here, there is no evidence that defendants were aware prior to October 2, 1991, that Nathan would beat up Andy. After October 2, 1991, there were no further serious incidents between Andy and Nathan. The fact that fights occurred on a regular basis at the high school is not sufficient to show that the defendants should have known Andy was in danger. The case might be different if Andy voiced to teachers or administrators his concern prior to the time Nathan attacked him. Moreover, the court does not believe that the punishments for fighting implemented

and followed by Fannin County High School in any way caused the injuries sustained by Andy. No evidence in this case shows that school officials, administrators, or teachers were responsible for Nathan's attack on Andy. Thus, the court rejects the plaintiffs' argument that the defendants and Andy were in a special relationship such that defendants had a constitutional duty to protect him.

Because the court concludes that, on the facts of this case, the state had no constitutional duty to protect Andy Russell from Nathan Lewis, its alleged failure to do so simply could not constitute a violation of the due process clause. Because the court concludes that the due process clause did not require the state to protect Andy from Nathan under the circumstances of this case, the court need not address defendants' alternative argument that the individual state actors lacked the requisite "state of mind" for a due process violation. *See DeShaney*, 489 U.S. at 202 n. 10, 109 S.Ct. at 1007 n. 10. Similarly, the court has no occasion to consider whether the individual defendants might be entitled to qualified immunity defense, *see Anderson v. Creighton*, 483 U.S. 635, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987) or whether allegations in the complaint are sufficient to support a section 1983 claim against Fannin County School District under *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) and its progeny. *See DeShaney*, 489 U.S. at 202 n. 10, 109 S.Ct. at 1007 n. 10. Nevertheless, the court is of the strong opinion that, on October 2, 1990, the defendants were fulfilling the duties owed to the plaintiff Andy Russell imposed upon them by the United States Constitution.

## CONCLUSION

■ Thus, the court concludes that even taking the facts in this case in the light most favorable to the plaintiffs, neither Andy nor his parents have a claim under section 1983. The court need not decide

---

9. Other courts relying on *DeShaney* have refused to impose an affirmative duty to prevent injury to students from other students, holding that there is no "special relationship" between the school system and its students. *See Arroyo v. PLA*, 748 F.Supp. 56 (D.P.R.1990); *Reeves by Jones v. Besonen*, 754 F.Supp. 1135 (E.D.Mich. 1991).

whether the facts in this case state a claim under state law, since the dismissal of federal claims removes the underlying basis for this court's subject matter jurisdiction, under 28 U.S.C. § 1331. Instead, the court will dismiss the pendant state law claim. *See United Mine Workers v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966).

It is HEREBY ORDERED that the defendants' motion for summary judgment with respect to the federal claims is GRANTED and plaintiffs' motion for summary judgment is DENIED. Accordingly, Count I and Count II of the plaintiffs' complaint are DISMISSED WITH PREJUDICE.

It is further ORDERED that Count III of the plaintiffs' complaint is DISMISSED WITHOUT PREJUDICE.

IT IS SO ORDERED.