**Tremain SPIVEY, Plaintiff,**

**Shirley Spivey, as next friend for Tremain Spivey, Plaintiff–Appellant,**

**v.**

**Michael ELLIOTT, Lynn Crothers, Wilma Davis, Carolyn Mitchell, Defendants–Appellees.**

**No. 93–8269.**

United States Court of Appeals, Eleventh Circuit.

Aug. 26, 1994.

Robert K. Finnell, Rome, GA, and Stephen M. Katz, Rowe, Foltz & Martin, Pamela Master, Atlanta, GA, for appellant.

Dennis R. Dunn, State Law Dept., Atlanta, GA, Ronald R. Womack, Sp. Asst. Atty. Gen., LaFayette, GA, and Arnold Wright, Jr., Atlanta, GA, for Elliott.

Before HATCHETT and COX, Circuit Judges, and RONEY, Senior Circuit Judge.

RONEY, Senior Circuit Judge:

After Tremain Spivey was sexually assaulted by a fellow classmate at the residential school which he attended, this case was filed against two officials of the school. Spivey appeals the district court's order granting summary judgment in favor of the school officials. The district court held that defendants had qualified immunity because the plaintiff failed to state a violation of a constitutional right under 42 U.S.C.A. § 1983. We hold that although plaintiff's claim was probably sufficient to allege a violation of a constitutional right, that right was not clearly established at the time. We affirm the summary judgment for defendant.

In September 1988, Shirley Spivey, Tremain's mother, enrolled her hearing impaired son as a residential student in the Georgia School of the Deaf ("the school"), a state-run school located in Cave Springs, Georgia. Tremain was eight years old. The boy resided at the school Sunday through Thursday and spent weekends at home with his mother. Tremain alleges he was sexually assaulted on numerous occasions by a thirteen-year-old schoolmate.

When Ms. Spivey learned of the attacks, she withdrew Tremain from the school and filed this action against Michael Elliott, the school's education director, and Lynn Crothers, the education supervisor. The complaint alleged defendants violated Tremain's Fifth and Fourteenth Amendment substantive due

process rights to liberty, privacy, and personal security. Plaintiff alleged that, because he was in the custody and control of the school, he had a special relationship with the State officials out of which arose their duty to protect him from harm. Tremain contends the named defendants knew or should have known that he was in a dangerous situation, and their failure to supervise amounted to reckless disregard or deliberate indifference, depriving him of his right to physical safety while in the State's custody pursuant to *Youngberg v. Romeo*, 457 U.S. 307, 102 S.Ct. 2452, 73 L.Ed.2d 28 (1982), and *Estelle v. Gamble*, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). Plaintiff also alleged pendent state law negligence claims not at issue in this appeal.

Defendants moved for summary judgment based on qualified immunity. In granting defendants' motion, the district court reasoned that there was no special relationship between plaintiff and the State, and therefore the State owed the plaintiff no affirmative duty to protect him against private violence under the Due Process Clause. Plaintiff appeals.

Officials exercising discretionary powers are "shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). "On summary judgment, the judge appropriately may determine, not only the currently applicable law, but whether that law was clearly established at the time an action occurred." *Id.* at 818, 102 S.Ct. at 2738.

In *Siegert v. Gilley*, 500 U.S. 226, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991), the Supreme Court clarified that analysis of a qualified immunity defense requires a determination of whether a constitutional claim exists. "A necessary concomitant to the determination of whether the constitutional right asserted by a plaintiff is 'clearly established' at the time the defendant acted is the determination of whether the plaintiff has asserted a violation of a constitutional right at all." *Id.* at 232, 111 S.Ct. at 1793. The Supreme

Court has directed that we first determine the currently applicable law and then whether that law was clearly established at the time the action complained of occurred. *Id.*

This Court has followed this analytical method in prior cases. *Oladeinde v. City of Birmingham*, 963 F.2d 1481, 1485 (11th Cir. 1992), (*quoting above-cited language from Siegert*), *cert. denied*, —— U.S. ——, 113 S.Ct. 1586, 123 L.Ed.2d 153 (1993); *Burrell v. Board of Trustees of Georgia Military College*, 970 F.2d 785, 792 (11th Cir.1992) ("Without a constitutional violation, there can be no violation of a clearly established right."), *cert. denied*, —— U.S. ——, 113 S.Ct. 1814, 123 L.Ed.2d 445 (1993); *Bennett v. Parker*, 898 F.2d 1530, 1532 (11th Cir.1990) ("If the facts taken in the light most favorable to the plaintiff do not establish a constitutional violation, then the public official should be granted summary judgment as a matter of law."), *cert. denied*, 498 U.S. 1103, 111 S.Ct. 1003, 112 L.Ed.2d 1085 (1991).

Other circuits have employed this analytical structure after *Siegert* as well. *E.g. Sivard v. Pulaski County*, 17 F.3d 185, 189 (7th Cir.1994) ("An analysis of qualified immunity is appropriate only after resolution of the purely legal question of whether [plaintiff] has alleged a violation of a constitutional right."); *Johnson v. City of Houston*, 14 F.3d 1056, 1060 (5th Cir.1994) (*accord*).

■ The type of special relationship plaintiff alleges has been recognized in the context of the State's constitutional duty to provide adequate care to incarcerated prisoners, *Estelle v. Gamble*, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976), and to involuntarily committed mental patients, *Youngberg v. Romeo*, 457 U.S. 307, 102 S.Ct. 2452, 73 L.Ed.2d 28 (1982). In *Estelle*, 429 U.S. 97, 103, 97 S.Ct. 285, 290 (1976), the Supreme Court held that the Eighth Amendment prohibition against cruel and unusual punishment, applicable to the State through the Fourteenth Amendment requires states to provide medical care to incarcerated prisoners. The Court reasoned that because the prisoner is unable "by the reason of the deprivation of his liberty [to] care for himself," it is only "just" that the State be required to take care

of him. 429 U.S. at 103, 97 S.Ct. at 290 (citations omitted).

The Court extended this analysis beyond the Eighth Amendment context in *Youngberg,* holding that an involuntarily committed mental patient retains a liberty interest to be protected substantively under the due process clause. The State is required to provide "reasonable safety" to these patients. 457 U.S. at 324, 102 S.Ct. at 2462. The State conceded and the court agreed the State must also provide "adequate food, shelter, clothing and medical care." *Id.*

This Circuit has also recognized a liberty interest where a child is involuntarily placed in a foster home. *Taylor v. Ledbetter,* 818 F.2d 791 (11th Cir.1987), *cert. denied,* 489 U.S. 1065, 109 S.Ct. 1337, 103 L.Ed.2d 808 (1989). Plaintiff claims that the liberty interest in this case is analogous to the liberty interest in *Estelle, Youngberg,* and *Taylor.*

Plaintiff claims the State affirmatively restrained him so that he was unable to care for himself by requiring him to attend school pursuant to Georgia's compulsory school attendance law, *see* Official Code of Georgia Annotated, Section 20–2–690.1 (1993), and by providing for his food, shelter, and medical care 24 hours a day while he resided at the school.

The district court rejected the contention that Georgia's compulsory education laws trigger a special relationship or duty between the State and its students in *Russell by Russell v. Fannin County School Dist.,* 784 F.Supp. 1576 (N.D.Ga.1992), *aff'd without opinion,* 981 F.2d 1263 (11th Cir.1992). The court reasoned that by mandating school attendance for children, the State has not assumed responsibility for their entire personal lives; their parents still retain responsibility for feeding, clothing and shelter. 784 F.Supp. at 1582–83.

All but one of the other circuits that have addressed the question have held that *compulsory school attendance laws* do not create a special relationship between the state and its students that would give rise to a duty to protect them from private violence within the school setting. *See Maldonado v. Josey,* 975 F.2d 727, 732–33 (10th Cir.1992) (boy unsu-pervised for 20 minutes caught in his bandanna and strangulated), *cert. denied,* —— U.S. ——, 113 S.Ct. 1266, 122 L.Ed.2d 662 (1995); *D.R. By L.R. v. Middle Bucks Area Vo Tech School,* 972 F.2d 1364, 1371 (3rd Cir.1992) (female students sexually molested by several male students), *cert. denied,* —— U.S. ——, 113 S.Ct. 1045, 122 L.Ed.2d 354 (1993); *J.O. v. Alton Community Unit School Dist. 11,* 909 F.2d 267, 272 (7th Cir. 1990) (student sexually molested by teacher). These courts reasoned that compulsory school attendance laws do not mean that a state assumes complete and ultimate responsibility for the care of its students. *Id.; cf. Doe v. Taylor Independent School Dist.,* 15 F.3d 443 (5th Cir.1994) (Where teacher accused of sexually molesting high school student, Fifth Circuit held that public school officials have an affirmative duty to protect school children from known or reasonably foreseeable harm occurring during or in connection with school activities). Thus, this contention alone does not suffice to allege deprivation of a liberty interest.

It is plaintiff's status as a residential student that distinguishes his circumstance from that of the student-plaintiffs in the above-cited cases. Each of those cases involved a day school situation where the students attended school for a set number of hours and returned home to the supervision of their parents and the protection of their homes at the end of the day. Thus, it was still the children's parents who had ultimate control of their basic needs on a daily basis. Tremain could not go home at the end of the day. Tremain had only the State upon which to rely for his food, shelter, and safety during the school week.

Indeed, the compulsory education cases all distinguished the school setting from prison or other institutionalization on the basis that the state had no continuing obligation for the child's care. *See Middle Bucks,* 972 F.2d at 1372 ("Students ... do not depend upon the schools to provide for their basic human needs. Public school students are required to spend only 180 six-hour days in the classroom per year."); *Alton,* 909 F.2d at 272 ("[t]he state's custody over their person is the most distinguishing characteristic in the

cases of the mental patient and prisoner; these people are unable to provide for basic human needs like food, clothing shelter, medical care, and reasonable safety ... the parents still retain primary responsibility for feeding, clothing sheltering and caring for the child."); *Maldonado,* 975 F.2d at 733 (while prisoners, the institutionalized or children in foster homes "depend completely on the state to satisfy their basic human needs.... [s]chool children, on the other hand, can go home at the end of the day."). These cases leave open the question of whether their outcome would have been different if the school settings were residential.

The State argues that this case is different from that of the institutionalized person or foster child because Tremain went to the school voluntarily. Thus this case is more like *Fialkowski v. Greenwich Home For Children,* 921 F.2d 459 (3rd Cir.1990), in which the court found no liberty interest where the parents of a severely retarded adult placed him voluntarily in a state-run group home.

■ While the State did not affirmatively reach out and take Tremain into its custody against his will as it does with the prisoner, the involuntarily committed mental patient, or the foster child, the outcome of the case cannot turn on that distinction. Otherwise, the State could treat differently a foster child whose parents admit they cannot properly care for the child and willingly turn the child over to foster care from a child who is taken from unwilling parents. Whether the plaintiff willingly enters state custody is not determinative. The question is not so much *how* the individual got into state custody, but to what extent the State exercises dominion and control over that individual.

This type of analysis is contemplated by the Supreme Court in *DeShaney v. Winnebago County Dept. of Social Services,* 489 U.S. 189, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989). The district court relied upon *DeShaney* for

the proposition that the State owes Tremain no duty to protect him from harm inflicted by a private rather than a state actor. The Supreme Court held that the State's failure to protect a son from his father did not violate his rights under the substantive component of the Due Process Clause. The Court stated that the State's failure to protect an individual against private violence generally does not constitute a violation of the Due Process Clause because the Clause imposes no duty on the State to protect citizens against invasion by private persons. *Id.* at 195, 109 S.Ct. at 1002.

*DeShaney* is factually dissimilar, as the minor victim was not in state custody at the time of the injury. However, the Court's discussion indicated that there are circumstances beyond those in *Estelle* and *Youngberg* where restraint by the State can create a relationship engendering constitutional protection. "It is the State's affirmative act of restraining the individual's freedom to act on his own behalf—through incarceration, institutionalization or other similar restraint of personal liberty ... that triggers the protections of the Due Process Clause...." *DeShaney,* 489 U.S. at 200, 109 S.Ct. at 1006.

The State exercised added control over Tremain because of his young age and severe handicap. A hearing impaired boy only eight years old necessarily depends upon the adults with whom he resides for his care. If the State did not tend to Tremain's basic needs while he resided at the school, those needs would go unmet. Because he spent the majority of the week at the school, we find unpersuasive the State's argument that Tremain was not committed to the full-time care of the State.[1]

■ A decision that there was a special relationship which triggers a duty to protect similar to the duty found in *Youngberg* and *Taylor* does not conclude the matter, however. The defendants are entitled to qualified

---

**1.** After this opinion had been prepared, the Fifth Circuit decided a virtually identical case. The court held that a deaf student in a residential school who brought a section 1983 action alleging that the school superintendent failed to protect him from sexual assault by another student had alleged a violation of a constitutional right.

We part ways with the Fifth Circuit, however, on the question whether such a right was clearly established. *Walton v. Alexander,* 20 F.3d 1350 (5th Cir.) (reversing denial of summary judgment based on qualified immunity because no evidence of deliberate indifference), *reh'g en banc granted* (5th Cir.1994).

immunity if that law was not clearly established at the time. We hold it was not.

■ It is the plaintiff's burden to show that when the defendant acted, the law established the contours of a right so clearly that a reasonable official would have understood his acts were unlawful. *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987). Plaintiff has failed to carry this burden. On oral argument, plaintiff pointed to the holding in *Youngberg* as the case law that establishes plaintiff's rights here. But it is not enough to make "conclusory allegations of a constitutional violation" or to state "broad legal truisms." *Dartland v. Metropolitan Dade County,* 866 F.2d 1321, 1322–23 (11th Cir. 1989). The right must be particularized so that potential defendants are on notice that conduct in violation of that right is unlawful. *Barts v. Joyner,* 865 F.2d 1187, 1190 (11th Cir.), *cert. denied,* 493 U.S. 831, 110 S.Ct. 101, 107 L.Ed.2d 65 (1989). In determining whether the law is clearly established, it is important to consider facts of cases relied upon as precedent. *Adams v. St. Lucie County Sheriff's Dept.,* 962 F.2d 1563, 1575 (11th Cir.1992) (Edmondson, J. dissenting), *approved en banc,* 998 F.2d 923 (11th Cir. 1993). If the facts relied upon do not "stake out a bright line," the defendants enjoy qualified immunity. *Post v. City of Fort Lauderdale,* 7 F.3d 1552, 1557 (11th Cir.1993), *modified,* 14 F.3d 583 (11th Cir.1994).

There are no bright lines here. Because no reported case addressed this kind of residential school, the district court and the parties were forced to interpret analogous cases. The district court held that no liberty interest was implicated. On the other hand, we hold that our analysis leads us to an opposite conclusion. Where there is so much room for differing interpretations, we cannot say the contours of the right were clearly established. In *Taylor,* we extended the right held by involuntarily committed mental patients to involuntarily placed foster children. In a circumstance such as this where an eight-year-old hearing impaired child is in the State's care 24 hours a day five days a week, the facts are sufficiently analogous to *Taylor* to create a relationship between the child and the State such that the State has a duty to protect the child from harm. While it is logical to extend the analysis in *Taylor* to these facts, we cannot say that the extension was so obvious as to put the defendants on notice of potential wrongdoing. Because this right was not clearly established at the time this suit was brought, the defendants are entitled to qualified immunity. We affirm the district court's grant of defendants' motion for summary judgment.

AFFIRMED.

COX, Circuit Judge, dissenting in part and concurring in part:

I disagree with the conclusion that Spivey's complaint alleges a violation of a constitutional right. Therefore, I would decide this case not on the "clearly established" prong of the qualified immunity analysis, but on the failure of Spivey to allege a violation of a constitutional right. Because my view is that no constitutional right of this kind exists, I necessarily agree that no such right is clearly established.

Truly Spivey is a sympathetic plaintiff. I am glad that Georgia tort law provides a remedy for the wrong he alleges he has suffered. But in my view any wrong done him is not redressable under the Constitution.

The majority suggests that Spivey suffered a deprivation of a liberty interest, protectable under the substantive due process component of the Due Process Clause of the Fourteenth Amendment. The Supreme Court has counseled that we be reluctant to expand this constitutional concept "because the guideposts for responsible decisionmaking in this uncharted area are scarce and open-ended." *Albright v. Oliver,* — U.S. —, —, 114 S.Ct. 807, 812, 127 L.Ed.2d 114 (1994) (quoting *Collins v. Harker Heights,* — U.S. —, —, 112 S.Ct. 1061, 1068, 117 L.Ed.2d 261 (1992)); *see also Regents of University of Michigan v. Ewing,* 474 U.S. 214, 225–26, 106 S.Ct. 507, 513–14, 88 L.Ed.2d 523 (1985) ("[T]he substantive content of the [Due Process] Clause is suggested neither by its language nor by preconstitutional history; that content is nothing more

than the accumulated product of judicial interpretation of the Fifth and Fourteenth Amendments." (quoting *Moore v. East Cleveland*, 431 U.S. 494, 543–544, 97 S.Ct. 1932, 1958–1959, 52 L.Ed.2d 531 (1977) (White, J., dissenting))). Today's decision is an unwarranted expansion of substantive due process.

Based on *Estelle v. Gamble*, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976), *Youngberg v. Romeo*, 457 U.S. 307, 102 S.Ct. 2452, 73 L.Ed.2d 28 (1982), *DeShaney v. Winnebago Co. Dept. of Social Servs.*, 489 U.S. 189, 109 S.Ct. 998, 103 L.Ed.2d· 249 (1989), and *Taylor v. Ledbetter*, 818 F.2d 791 (11th Cir. 1987), *cert. denied*, 489 U.S. 1065, 109 S.Ct. 1337, 103 L.Ed.2d 808 (1989), the majority concludes that the State of Georgia had a "special relationship" with Spivey, giving rise to a duty to protect him from private harm. (Op. pp. 1524–27). Though *DeShaney* held that "[a]s a general matter ... a State's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause," 489 U.S. at 197, 109 S.Ct. at 1004, the majority reasons that the exceptions to this general rule that the *DeShaney* Court outlined contemplate a duty on the part of the State to protect Spivey. This despite the *DeShaney* Court's clear statement that the exceptions to the general rule taken together "stand only for the proposition that when the State takes a person into its custody *and holds them [him] there against his will*, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being." *Id.* at 199–200, 109 S.Ct. at 1005 (emphasis added). Only two cases illustrated this proposition. One, *Estelle*, involved prisoners confined by a state, and the other, *Youngberg*, involved involuntarily committed mental patients institutionalized by a state.

More in point are numerous cases involving the assault of a student while attending school. Our court has previously held that a compulsory attendance policy does not create the type of "special relationship" the Supreme Court contemplated in *Estelle* and *Youngberg*. *Russell v. Fannin County School Dist.*, 784 F.Supp. 1576 (N.D.Ga.

1992), *aff'd without opinion*, 981 F.2d 1263 (11th Cir.1992). Several other circuits have reached the same conclusion. *See Dorothy J. v. Little Rock School Dist.*, 7 F.3d 729, 732 (8th Cir.1993); *Maldonado v. Josey*, 975 F.2d 727, 732–733 (10th Cir.1992), *cert. denied*, —— U.S. ——, 113 S.Ct. 1266, 122 L.Ed.2d 662 (1993); *D.R. v. Middle Bucks Area Voc. Tech. School*, 972 F.2d 1364, 1371 (3d Cir. 1992), *cert. denied*, —— U.S. ——, 113 S.Ct. 1045, 122 L.Ed.2d 354 (1993); *J.O. v. Alton Community Unit School Dist. 11*, 909 F.2d 267, 272 (7th Cir.1990). The majority says that these cases are distinguishable due to Spivey's status as a "residential student." The State assumes a greater responsibility for Spivey, the majority finds, because he "could not go home at the end of the day" like the non-resident student-plaintiffs.

This is an irrelevant distinction. The Supreme Court has made clear that the relationship that is necessary to create a duty on the State to prevent private harm to individuals arises only "when the State by the affirmative exercise of its power so restrains an individual's liberty that it renders him unable to care for himself." *DeShaney*, 489 U.S. at 200, 109 S.Ct. at 1005; *see Youngberg*, 457 U.S. at 315–16; 102 S.Ct. at 2457–58; *Estelle*, 429 U.S. at 103–04, 97 S.Ct. at 290–91. The State must be holding a person "against [his or her] will." *DeShaney*, 489 U.S. at 199–200, 109 S.Ct. at 1005. This court's holding in *Taylor* was based upon the involuntary nature of the commitment. *See* 818 F.2d at 797 ("We hold that a child *involuntarily* placed in a foster home ... may bring a section 1983 action for violation of fourteenth amendment rights." (emphasis added)). The State imposed no such restraint upon Spivey. Spivey was voluntarily enrolled in this special school Georgia provides for hearing-impaired students. Spivey's mother retained the discretion to remove him from the school.

Today's court acknowledges that existing precedent does not support its holding, and creates a new category of constitutional torts based upon "the extent to which the State exercises dominion and control over an individual." (Op. p. 1526). This holding has no roots in the history or text of the Constitu-

tion. In my view, it has no roots in constitutional law either.