73 F.3d 274
 11 IER Cases 481
 Phyllis B. LIEBSON and John Liebson, Plaintiffs-Appellees,
v.
NEW MEXICO CORRECTIONS DEPARTMENT, John Thomas, Dareld
Kerby, Lawrence Barreras, Jerome Tafoya, and Barry
Hertzog, Defendants-Appellants.
 No. 94-2210.
 United States Court of Appeals,
Tenth Circuit.
 Jan. 2, 1996.
 
 Kathrin Kinzer-Ellington of Catron, Catron & Sawtell, P.A., Santa Fe, New Mexico, for plaintiffs-appellees.
 Paul M. Schneider, Legal Bureau/RMD, State of New Mexico, Santa Fe, New Mexico, for defendants-appellants.
 Before TACHA, LOGAN, and BRISCOE, Circuit Judges.
 BRISCOE, Circuit Judge.
 
 
 1
 Plaintiffs Phyllis B. Liebson and John Liebson filed this action, alleging that defendants, the New Mexico Corrections Department and various department officials, violated Ms. Liebson's constitutional rights. Plaintiffs also asserted several state law claims, all of which were remanded to state court. Neither the propriety of the district court's decision to remand plaintiffs' state law claims nor the merits of those claims is at issue here. The individual defendants in this matter, John Thomas, Dareld Kerby, Lawrence Barreras, Jerome Tafoya, and Barry Hertzog, appeal the district court's denial of their motion to dismiss Ms. Liebson's 42 U.S.C. Sec. 1983 claims on qualified immunity grounds. We reverse and remand.[1]
 
 
 2
 Plaintiff Phyllis B. Liebson was employed as a librarian by the Santa Fe Community College. Pursuant to a joint powers agreement between the College and the New Mexico Corrections Department, she was assigned to provide library services to the inmates housed in the maximum security unit of the New Mexico State Penitentiary. A corrections officer was present in the library at all times that she was on duty until March 21, 1992, when defendants changed the library hours and the schedule of the officer assigned to the library. On March 26, 1992, Ms. Liebson was on duty in the library with no officer present. She was kidnapped, held hostage, and sexually assaulted by an inmate library assistant.
 
 
 3
 Plaintiffs subsequently filed suit, alleging that defendants' decision to change the schedule of the corrections officer in the library was the proximate cause of Ms. Liebson's injuries, and that defendants' decision deprived Ms. Liebson of her "right to liberty without due process of law and without equal protection of the law, and deprived her of property, privileges, and immunities secured to her by the laws and Constitution of the United States."
 
 
 4
 The question presented by this appeal is whether the district court erred in denying qualified immunity to the individual defendants on Ms. Liebson's Sec. 1983 due process claim. Because qualified immunity is a question of law, we review the district court's decision de novo. Martinez v. Mafchir, 35 F.3d 1486, 1489 (10th Cir.1994). In so doing, we must accept all of the well-pleaded allegations in the complaint as true and must construe them in the light most favorable to Ms. Liebson. See Mascheroni v. Board of Regents of Univ. of Cal., 28 F.3d 1554, 1560 (10th Cir.1994).
 
 
 5
 In Siegert v. Gilley, 500 U.S. 226, 231-33, 111 S.Ct. 1789, 1792-93, 114 L.Ed.2d 277 (1991), the Supreme Court clarified the appropriate framework for reviewing claims of qualified immunity. Under this framework, a court must first determine whether the plaintiff "has asserted a violation of a constitutional right at all." Id. at 232, 111 S.Ct. at 1793. If the court determines that plaintiff has asserted the violation of a constitutional right, the court must then determine whether that right was clearly established so that reasonable officials in defendants' situation would have understood their conduct violated that right. Mafchir, 35 F.3d at 1490.
 
 
 6
 Following the Siegert framework, we must first decide whether Ms. Liebson has asserted the violation of her due process rights. Generally, state actors are liable under the due process clause only for their own acts and not for the violent acts of third parties. Uhlrig v. Harder, 64 F.3d 567, 572 (10th Cir.1995). However, we recently noted there are two recognized exceptions to this general rule. Id. The first exception, known as the special relationship doctrine, "exists when the state assumes control over an individual sufficient to trigger an affirmative duty to provide protection to that individual...." Id. See DeShaney v. Winnebago County Dept. of Social Servs., 489 U.S. 189, 199-200, 109 S.Ct. 998, 1005-1006, 103 L.Ed.2d 249 (explaining that "when the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being"). The second exception, sometimes referred to as the "danger creation" theory, provides that a state may also be liable for an individual's safety "if it created the danger that harmed the individual...." Id. See Medina v. City and County of Denver, 960 F.2d 1493, 1495-99 (10th Cir.1992) (explaining that police officers who engaged in a high speed car chase could be liable for creating a special danger faced by a bicyclist, but were protected in that case by their shield of qualified immunity).
 
 
 7
 Here, plaintiff seeks to invoke both exceptions in pursuit of her Sec. 1983 due process claim. In her complaint, Ms. Liebson alleges that a "special relationship" existed between defendants and herself "[b]y virtue of her assignment to the North Facility of the Penitentiary of New Mexico," and that defendants breached their duty to provide protection to her by revising the library hours and removing the corrections officer from the library. Ms. Liebson also alleges she was "kidnapped, held hostage and sexually assaulted by a prison inmate," and that "[d]efendants' removal of the correction officer from the ... library was a negligent act and was a direct and proximate cause" of her injuries.
 
 
 8
 We find that Ms. Liebson has failed to allege an actionable due process claim. Although it is perhaps a close question, we reject the assertion that a "special relationship" existed between Ms. Liebson and defendants sufficient to trigger an affirmative duty on the part of defendants to protect Ms. Liebson. In particular, without downplaying the dangerous conditions that undoubtedly existed in the penitentiary, we believe the consensual nature of the employment relationship between Ms. Liebson and defendants differentiates this case from those in which a "special relationship" has been found to exist. Uhlrig, 64 F.3d at 572. Ms. Liebson's presence in the prison library, both before and after the guard was removed, was completely voluntary. By her employment with the college and assignment to the prison library under the joint powers agreement, she was free to come and go each day of her employment. Through this employment relationship, she was not taken into state custody and held against her will.
 
 
 9
 Likewise, we find that the "danger creation" theory is inapplicable under the alleged facts. Although Ms. Liebson has alleged that defendants acted negligently in changing the hours of the library and removing the corrections officer, there is nothing alleged in the complaint that we believe "shocks the conscience." Id. More specifically, we are not convinced that Ms. Liebson has alleged any "conduct that was so egregious, outrageous and fraught with unreasonable risk so as to shock the conscience." Id. at 576.
 
 
 10
 Although this case is similar to L.W. v. Grubbs, 974 F.2d 119 (9th Cir.1992), cert. denied --- U.S. ----, 113 S.Ct. 2442, 124 L.Ed.2d 660 (1993), we believe it is distinguishable. In Grubbs, the plaintiff was a registered nurse employed by the State of Oregon at a medium security custodial institution for young male offenders. Although plaintiff was assured at the time she was hired that she would not be required to work alone in the medical clinic with violent sex offenders, the defendant supervisors subsequently selected an inmate who was a known violent sex offender to work alone with plaintiff. Once alone, the inmate assaulted, battered, kidnapped, and raped the plaintiff. In concluding plaintiff had asserted a cognizable Sec. 1983 claim, the court noted that, in her complaint, plaintiff alleged defendants knowingly assigned the inmate to work with her despite their knowledge that (a) the inmate was not qualified to work in the clinic; (b) the inmate had an extraordinary history of unrepentant violence against women and girls; (c) the inmate was likely to assault a female if left alone with her; (d) the inmate and plaintiff would be alone together; and (e) plaintiff would not be prepared to defend herself against an attack by the inmate. Id. at 121. Based upon these allegations, the court concluded that defendants had independently created an opportunity for and facilitated the inmate's assault on plaintiff. Id. at 121-22.
 
 
 11
 Here, in contrast, plaintiffs have not alleged any such "conscience-shocking" facts. Although plaintiffs have alleged that defendants' removal of the security officer was done with "deliberate indifference and in complete disregard" of Ms. Liebson's rights, they have not alleged any specific facts, as did the plaintiff in Grubbs, to indicate that defendants' actions were egregious, outrageous, or fraught with unreasonable risk.
 
 
 12
 Even assuming, for purposes of argument, that Ms. Liebson has alleged an actionable due process claim, we are not convinced the due process rights at issue were so clearly established that reasonable officials in defendants' situation would have understood their conduct violated those rights. In March 1992, the point in time when defendants changed the schedule of the officer assigned to the library, the law was clearly established that state officials had no constitutional duty to protect citizens from the actions of private parties. DeShaney, 489 U.S. at 195-97, 109 S.Ct. at 1002-03. At the other end of the spectrum, it was also clearly established that state officials had a duty to protect individuals whom they had taken involuntarily into their physical custody and control. See id., at 199-200, 109 S.Ct. at 1005-1006. Relying upon Estelle v. Gamble, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976), Youngberg v. Romeo, 457 U.S. 307, 102 S.Ct. 2452, 73 L.Ed.2d 28 (1982), and City of Revere v. Massachusetts Gen. Hosp., 463 U.S. 239, 103 S.Ct. 2979, 77 L.Ed.2d 605 (1983), the DeShaney court indicated that
 
 
 13
 it is the State's affirmative act of restraining the individual's freedom to act on his own behalf--through incarceration, institutionalization, or other similar restraint of personal liberty--which is the "deprivation of liberty" triggering the protections of the Due Process Clause, not its failure to act to protect his liberty interests against harms inflicted by other means.
 
 
 14
 489 U.S. at 200, 109 S.Ct. at 1005.
 
 
 15
 Although Ms. Liebson asserts that DeShaney and the cases cited therein clearly established a constitutional duty on the part of defendants to protect her because of their physical control over her while she was working in the prison library, we disagree. Simply put, Ms. Liebson's situation is not so closely analogous to the custodial relationships addressed by DeShaney or the cases cited therein to consider her constitutional claim clearly established in March 1992.
 
 
 16
 In Estelle, the Supreme Court held that states are constitutionally required to provide medical care to incarcerated prisoners because they are unable to take care of themselves as a result of the state's deprivation of their liberty. 429 U.S. at 103-04, 97 S.Ct. at 290-91. Similarly, in Youngberg, the Court determined the Constitution required states to provide necessary medical care to involuntarily committed mental patients in order to ensure their reasonable safety. 457 U.S. at 314-16, 102 S.Ct. at 2457-58. In City of Revere, the Court held the responsible government agency must provide medical care to suspects in police custody who have been injured during their apprehension. 463 U.S. at 244, 103 S.Ct. at 2983.
 
 
 17
 While the facts of this case need not precisely mirror those addressed in prior precedent in order to preclude qualified immunity, Yvonne L. v. New Mexico Dept. of Human Services, 959 F.2d 883, 891 (10th Cir.1992), Ms. Liebson must demonstrate a substantial correspondence between the conduct in question and prior law establishing that defendants' actions were clearly prohibited. Romero v. Fay, 45 F.3d 1472, 1475 (10th Cir.1995). Under the facts alleged by Ms. Liebson, we cannot conclude that extension of the custodial relationships addressed in DeShaney to Ms. Liebson's employment situation was sufficiently obvious to put a reasonable state official on notice that his conduct was constitutionally proscribed. See Spivey v. Elliott, 29 F.3d 1522, 1527 (11th Cir.1994), on reconsideration, 41 F.3d 1497 (11th Cir.1995). Although Ms. Liebson may have been subject to some physical restraint as a result of her employment in the penitentiary, she was not restrained to the same extent as those incarcerated in the penitentiary. Therefore, her situation as an employee within the penitentiary was not sufficiently analogous to the custodial relationships addressed in Estelle, Youngberg, and City of Revere to persuade us the law was clearly established in March 1992 that state officials owed a constitutional duty to protect her from harm inflicted by a private party. See Trigalet v. Young, 54 F.3d 645, 648 (10th Cir.1995), cert. denied, --- U.S. ----, 116 S.Ct. 340, 133 L.Ed.2d 238 (1995).
 
 
 18
 Nor are we persuaded that the law was clearly established in March 1992 that defendants' decision to change the library hours and the hours of the corrections officer assigned thereto was sufficient to trigger liability under the "danger creation" theory. Although Ms. Liebson cites White v. Rochford, 592 F.2d 381 (7th Cir.1979), and Wood v. Ostrander, 879 F.2d 583 (9th Cir.1989), cert. denied, 498 U.S. 938, 111 S.Ct. 341, 112 L.Ed.2d 305 (1990), we find those cases clearly distinguishable.
 
 
 19
 Both White and Wood involved police officers who, in effecting the arrests of drivers of vehicles, abandoned passengers in the vehicles to fend for themselves in dangerous situations. In White, the passengers were three minor children abandoned on a busy Chicago highway at night and in cold weather. 592 F.2d at 382. In Wood, the passenger was a woman abandoned at 2:30 a.m. in a high crime area. 879 F.2d at 586.
 
 
 20
 In White, the Seventh Circuit held that the unjustified and arbitrary refusal of police officers to lend aid to children endangered by the performance of official duty, where that refusal ultimately results in physical and emotional injury to the children, "indisputably breaches the Due Process Clause." 592 F.2d at 383. Accordingly, under the facts alleged by the plaintiff, the Seventh Circuit held that the officer's conduct clearly represented an intrusion into the children's personal integrity, a liberty interest protected by the due process clause, and shocked the conscience, running against fundamental notions of fairness. Id. at 383-86.
 
 
 21
 Similarly, in Wood, the Ninth Circuit held that plaintiff had raised a genuine issue of fact suggesting the defendant officer acted with deliberate indifference to plaintiff's interest in personal security. 879 F.2d at 588. In particular, the Ninth Circuit noted that the officer had "allegedly acted in callous disregard for [plaintiff's] physical security, a liberty interest protected by the Constitution." Id. at 589.
 
 
 22
 Here, the facts alleged by Ms. Liebson are substantially different than those alleged in White or Wood. Although Ms. Liebson has alleged that defendants acted negligently and with "deliberate indifference" to her rights, we find nothing about defendants' conduct, as alleged in the complaint, that is comparable to the reckless and conscience-shocking conduct alleged in White and Wood. Accordingly, we find White and Wood wholly insufficient to establish that defendants' actions were clearly prohibited.
 
 
 23
 For the reasons set forth above, the decision of the district court denying qualified immunity to defendants is reversed, and this case is remanded for further proceedings consistent with this opinion.
 
 
 
 [1]
 After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed.R.App.P. 34(a); 10th Cir.R. 34.1.9. The case is therefore ordered submitted without oral argument